ROGERS, Justice.
 

 Stark E. Lambert was found guilty of libel and sentenced to pay a fine of $30 and costs and to be imprisoned in the parish jail for 20 days, and in default of payment
 
 *971
 
 of the fine to be imprisoned for an additional period of 50 days. Not having the right of appeal, he applied for writs of certiorari and prohibition. Certiorari issued and the proceedings complained of by relator are now before us for review.
 

 Relator, an uneducated manual laborer, is a resident of the State of Texas. On the death of his wife, Care Farley, he permitted her sister, Mrs. Ethel Farley, wife of William Bailey, to remove his minor children, Olean Lambert and Harold Lambert, to her home in Terrebonne parish, La. Mrs. Lillian Farley, wife of Conrad Morris, known to her family and friends as “Curley,” is also a sister of his deceased wife.
 

 On July 19, 1937, relator wrote a letter to Mrs. Ethel Farley Bailey, which letter reads as follows, viz.:
 

 “Mrs. D. L. Bailey
 

 “Dear Sister Law
 

 “Well Ethel I wont to no if I can geat my childern.now I wont to Bring them our hear with me and I wont to no if you are going to refuse to turn theme over to me You have been refusen me of Bring them home with me and you no you havnt no legal custody whatever of my children.^ I just let you all Keep them a whil was the agrément I woundent give my children to no on. You no that and you no that you cant keep my children dout you you no that theay isent a judge in the world could give you my children although my con-sente he would vileate the law if he did now I wont you to writ and tell me whather you are going to turn my children over to me are not I would lik to no in return meail
 

 “I have did my Best to geat alon with you all now its Been over two months Since you have written to me abought my children altho I have heaird thrue others frome them are I wood of Been crazy Buy now I will weat a few day for a ancer Before I file my complaint to the districk court if I half to I Shale Be able to have immediate custody whatever it will Be Better in the futcher for you all to turn them over to me if you ever entend to vesit the children I have objected to Orleen living with Kerley all the time She has been living at Houma for over three years and has lived with Conrad Morris ever since She has been thear and has Been Married abought five monts She might wont Orleen to live with a man a few years Befor She mear-ried him it Sure woodent suit me Well I dident let Kearley have Orleen I let you take her home with you and I told you at that time I did not wont Orleen to Stay thear with them
 

 “Well I must clos Hoping to hear from you soon
 

 “[Signed] S. E. Lambert.”
 

 On September 20, 1937, relator applied to the Seventeenth judicial district court, parish of Terrebonne, for writs of habeas corpus against Mrs. Ethel Farley Bailey and Mrs. Lillian Farley Morris, to recover the custody of his minor children.
 

 The next day, namely, on September 21, 1937, Mrs. Lillian Farley Morris filed an affidavit in the cifcy^ court of Houma, La., charging' relator with libel based on the
 
 *973
 
 contents of the letter which he had sent to Mrs. Ethel Farley Morris. Relator was arrested under the affidavit, and on October 4, 1937, the district attorney filed an information in the district court charging relator with libel. On October 22, 1937, relator was tried, convicted, and sentenced on the offense charged in the information.
 

 The portion of relator’s letter which it is alleged constitutes the libel is in the following words, viz.: “I have objected to Orleen living with Kerley all the time She has been living in Houma for over three years and has lived with Conrad Morris ever since She has been thear and has Been Married abought five monts She might wont Orleen to live with a man a few years Befor She mearried him it Sure woodent suit me.”
 

 The record presents two bills of exception. The first exception is to the overruling of defendant’s objection to the admission in evidence of his letter to Mrs. Bailey, on the ground that it is a privileged communication, being a private letter from defendant to his deceased wife’s sister, protesting that his daughter, eight years of age, should not be permitted to visit Lillian Farley, because of her relation with Conrad Morris, with whom she had been living in adultery. The other exception is taken to the overruling of defendant’s motion for a new trial, predicated on the ground that the private letter from defendant to his deceased wife’s sister, protesting the residence of his daughter, eight years of age, with Mrs. Morris, was prompted only by paternal concern for the welfare of his,daughter and not by any malice that.he bore Mrs. Morris, who he sincerely believed was living in adultery; that the letter was a privileged communication and, as such, could not form the basis of a charge of libel.
 

 The trial judge assigns as his reasons for overruling defendant’s motion for a new trial that: “The letter referred to above is in the record and speaks for' itself. The lady referred to therein is or was also his sister-in-law. The evidence in the case satisfied the Court that the lady, Mrs. Morris, was legally married to her husband, and did not deserve the reflections contained in the letter.”
 

 Relator is prosecuted for the violation of sections 804 and 3643 of the Revised Statutes. These sections read as follows, viz.:
 

 “Whoever shall maliciously defame any person by making, writing, publishing, or causing to be published, any manner of libel, shall, on conviction thereof, suffer fine or imprisonment, or both, at the discretion of the court.”
 

 Under the express terms of the statute, malice is an ingredient of the crime of libel. Without malice there can be no criminal responsibility. The general rule is, that legal malice, which in law means a wrongful act done intentionally, without just or lawful excuse, is sufficient to support a charge that the publication is libelous. And malice is presumed by the publication. But the rule has its limitations in cases of privileged communications. State v. Bienvenu, 36 La.Ann. 378. Where the communication is privileged, malice is not
 
 *975
 
 presumed by law Berot v. Porte, 144 La. 805, 81 So. 323, 3 A.L.R. 1651. In such communications the privilege can only be destroyed by actual malice, legal malice is not sufficient for the purpose.
 

 Privileged communications are ^either absolutely privileged or qualifiedly privileged. The qualified privilege exists where the communication complained of is made in good faith on any subject matter' in which the party has an interest or in reference to which he has a duty, either legal, moral, or social, if made to a person having a corresponding interest or duty. Oakes v. Walther, 179 La. 365, 154 So. 26.
 

 The defense of privilege is recognized in criminal as well as civil proceedings for libel or slander. 17 R.C.L. § 223, p. 461.
 

 This case was tried by the judge of the district court without the intervention of a jury. At defendant’s request, the trial judge specially charged himself that malice is necessary to convict in- a criminal prosecution for libel. From which we must assume the trial judge found that the publication was made maliciously and not for a justifiable purpose, and, therefore, was no't protected by the privilege invoked by the defendant.
 

 If the privilege is only qualified the onus lies on the plaintiff in a civil suit or on the State in a criminal prosecution of proving actual malice. This may be done either by extrinsic evidence of personal ill feeling or by intrinsic evidence, such as the exaggerated language, the mode and extent of the publication, and other matters in excess of the privilege. Odgers on Libel and Slander, 2d Ed., p. 438.
 

 An examination of the record discloses that the conviction of defendant was not based on any extrinsic proof that he acted through hatred, ill will, and a malicious design to injure the prosecutrix.
 

 As shown by the per curiam attached to the bill of exception taken to the overruling of the motion for a new trial, the trial judge found defendant guilty, because he was convinced that the prosecutrix, defendant’s sister-in-law, was legally married and did not deserve the reflections contained in defendant’s letter and that the letter itself afforded intrinsic proof of its malicious character.
 

 The question as to whether a communication is privileged involves questions of fact as well as of law. State v. Whitmire, 166 La. 195, 116 So. 849. Where the facts are not disputed the question of privilege becomes one of law. Odgers on Libel and Slander, 2d Ed., § 183, p. 216; Newell on Slander and Libel, 4th Ed., § 345, p. 385.
 

 The facts in this case do not appear to be disputed. Therefore, the question of privilege is purely one of law, which is reviewable by this court.
 

 The trial judge, in his per curiam, which we have hereinabove quoted, states that defendant’s letter speaks for itself. In analyzing the letter and determining its legal effect the document must be considered as a whole.
 

 
 *977
 
 Defendant’s letter, in the absence of any showing of malice, is a privileged communication, and not a libel.
 

 The utterance or publication of a privileged communication rebuts the inference of malice. Berot v. Porte, 144 La. 805, 81 So. 323, 3 A.L.R. 1651. Intrinsically, the publication under review is not malicious. There is no indication from the tone and style of the letter that defendant, in writing it, was actuated by hatred, ill will, and a wanton desire to injure the prosecutrix.
 

 Defendant’s letter was a private communication from a father to the custodian of his minor daughter. The letter was not circulated and- published generally. Both defendant, as the father, and the recipient, as the custodian, had an interest in the subject matter. The language of the letter indicates that it was prompted solely by the defendant’s solicitude for the welfare of his little daughter, to whom he owed a legal and moral duty. It also indicates that defendant thought the occasion called for his protest and admonition to the person to whom he had temporarily intrusted the custody of his daughter, who likewise owed a legal and moral duty to the child who had been placed in her care.
 

 The trial judge, in his per curiam, shows that the statement concerning the prosecu-trix was untrue, but he does not show that defendant knew that it was untrue, and, so knowing, acted with a wanton desire to injure her. On the contrary, the letter indicates that defendant honestly thought the statement was true and that he acted from an honest motive and for a justifiable purpose.
 

 In the absence of a showing of express malice, defendant’s communication, without regard to its truth or falsity, was qualifiedly privileged, and his prosecution therefor cannot be sustained. Baysset v. Hire, 49 La.Ann. 904, 22 So. 44, 62 Am.St.Rep. 675.
 

 For the reasons assigned, the conviction and sentence of the relator, Stark E. Lambert, are annulled, and relator is ordered discharged.